**J.K. AND SUSIE L. WADLEY RESEARCH INSTITUTE AND BLOOD BANK, D/B/A the Blood Center at Wadley, Appellant,**

v.

**Esther BEESON, Individually and as Representative of the Estate of Thomas W. Beeson, and Bruce Beeson, Appellees.**

No. 05–91–01574–CV.

Court of Appeals of Texas, Dallas.

June 11, 1992.

Rehearing Denied July 21, 1992.

**2.** We do not determine whether the same would be true when a trial court enters an ex parte order.

Mickie S. Fleetwood, Michael W. Huddleston, Dallas, for appellant.

Kip A. Petroff, Erin C. Askew, Dallas, for appellees.

Before STEWART, CHAPMAN and ROSENBERG, JJ.

## OPINION

STEWART, Justice.

This is a suit against a blood bank resulting from the death of a blood recipient from acquired immunodeficiency syndrome (AIDS) and the subsequent AIDS infection of the recipient's wife. The plaintiffs alleged that the blood bank negligently screened blood donors and tested blood donations for infection.

J.K. and Susie L. Wadley Research Institute and Blood Bank, d/b/a The Blood Center at Wadley (Wadley), appeals from a judgment in favor of appellees, Esther Beeson, individually and as representative of the estate of Thomas W. Beeson, and Bruce Beeson (the Beesons), in the Beesons' suit under the wrongful death and survival statutes. Wadley argues in three points of error that the trial court erred in denying its motion for judgment notwithstanding the verdict because (1) the Beesons' wrongful death and survival causes of action are barred by the applicable statutes of limitations, (2) Esther's personal injury claims are barred by the applicable statutes of limitations, and (3) the evidence is legally insufficient to support the jury verdict with regard to causation. For the reasons given below, we affirm the trial court's judgment.

## BACKGROUND FACTS

On April 22, 1983, Dr. William Kraus, a cardiologist, discovered that Tom had severe blockage of two major arteries in his heart and recommended cardiac bypass surgery. During surgery that same day, Tom received seven units of blood by transfusion. In late May 1987, Tom had trouble breathing and chest pain. He was hospitalized on June 5, 1987. Dr. Kraus consulted with two specialists in pulmonary medicine about the unusual pneumonia evident in x-rays of Tom's lungs. Because there was a possibility that the lung infection was secondary to AIDS, Tom was tested for HIV. Although Tom had not been formally diagnosed, doctors empirically started him on therapy for AIDS on June 6, 1987. On June 9, 1987, Tom was formally diagnosed as HIV positive. Esther was then tested for HIV, and she learned in June 1987 that she was HIV positive. Tom died on July 2, 1987.

On April 21, 1989, Esther and her son, Bruce, filed suit against Wadley alleging that Tom contracted AIDS from the transfusion of a unit of blood donated at Wadley on April 19, 1983, by a donor identified at trial as John Doe. The parties stipulated at trial that Doe was a sexually active homosexual male with multiple sex partners. On June 7, 1990, the Beesons amended their original petition to contend that Wadley's negligence in testing and screening blood donors caused Esther's contraction of AIDS. At trial, the jury awarded the Beesons $800,000 in damages. Following the trial court's denial of Wadley's motion for judgment n.o.v., Wadley filed this appeal.

## STATUTE OF LIMITATIONS

### A. Wrongful Death and Survival Claims

Wadley argues in its first point of error that the trial court erred in denying its

motion for judgment n.o.v. because the Beesons' wrongful death and survival causes of action are barred by the applicable statutes of limitations. Wadley's pleadings alleged that the Beesons' claims were barred by the "statute of limitations pursuant to the Medical Liability and Insurance Improvement Act of Texas, art. 4590(i)" and by the "common law statute of limitations."

Wadley first argues that Tom's negligence cause of action is a claim for personal injuries barred by the two-year statute of limitations. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). The Beesons respond that the allegation that their claims were barred by the "common law statute of limitations" was insufficient to raise the statute of limitations contained in section 16.003(a) as an affirmative defense because it failed to give them fair notice of Wadley's defensive theory. *Schley v. Structural Metals, Inc.*, 595 S.W.2d 572, 586 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); *Hunter v. Carter*, 476 S.W.2d 41, 45 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). The Beesons maintain that Wadley's failure to properly plead and prove its plea of limitations under section 16.003(a) waived this defense on appeal. *Woods v. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988).

■ We agree that the defendant must state its affirmative defenses in sufficient detail to give the plaintiff fair notice of the defensive issues to be tried. *Hunter*, 476 S.W.2d at 45. The Beesons, however, should have filed special exceptions if they wanted more specificity. A party waives any defect, omission, or fault in a pleading that is not specifically pointed out by a special exception. TEX.R.CIV.P. 90. Here, because the Beesons did not file special exceptions to Wadley's "common law statute of limitations" pleading, they waived any complaint about its insufficiency. *Id.* Accordingly, we conclude that we may consider section 16.003(a) on appeal. We next address the Beesons' contention that Wadley failed to prove its statute of limitations defense.

■ Wadley had the burden of proof on its limitations defense at trial. *Woods,* 769 S.W.2d at 517. Thus, to prevail on appeal of the denial of a judgment n.o.v., Wadley must demonstrate that the evidence conclusively established that the cause of action was barred as a matter of law. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 931 (Tex.1983); *Miranda v. Joe Myers Ford, Inc.,* 638 S.W.2d 36, 38 (Tex.App.—Houston [1st Dist.] 1982, pet. dism'd). Section 16.003(a) of the Texas Civil Practice and Remedies Code, relied on by Wadley, provides that claims for personal injury must be brought no later than two years after the day the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). Thus, we must determine when the cause of action accrued before we can determine if Wadley has conclusively established that the Beesons' claims are barred as a matter of law.

■ A cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of the injury. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). Wadley contends that its alleged wrongful conduct occurred on April 19, 1983, when it collected the unit of HIV-contaminated blood from Doe and that Tom suffered a legal injury when he received that unit of blood by transfusion on April 22, 1983. Therefore, Wadley asserts that Tom's right of redress accrued on April 22, 1983, and that limitations barred his cause of action for negligence as of April 22, 1985. TEX.CIV.PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986).

■ The Beesons reply that a cause of action accrues when, and only when, damages are sustained. *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967). They rely on the supreme court's language in *Atkins* to the effect that the test to determine when limitations begin to run against a tort claim is "whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of [the p]laintiff." The court stated that if the act is not unlawful in this sense, the cause of action for subsequent

damages arising from the act accrues only when these damages are sustained. The Beesons argue that Tom did not suffer damages when he received the transfusion because the blood saved his life and because provision of the blood was legal since Tom had authorized his physician to order a blood transfusion; therefore, they maintain that the transfusion was not an invasion of Tom's legally protected right. *Id.* Instead, they argue that only a *potential* for future injury arose when Tom received the contaminated blood, *see Independent Life & Acc. Ins. Co. v. Childs*, 756 S.W.2d 54, 55 (Tex.App.—Texarkana 1988, no writ), and that he did not suffer an *actual* injury until the symptoms appeared in May 1987. They assert that Tom could not have sued Wadley the day after he received the blood because he could not have proved that he had suffered any injury; on that day he had endured no pain and had incurred no expense or other damage of any kind due to the blood transfusion. Hence, they conclude that, because the cause of action allegedly could not have accrued on that day for lack of damages, there simply was no cause of action until Tom first suffered damages from the contaminated blood by exhibiting the symptoms of HIV in May 1987.

We agree that Tom did not suffer a legal injury at the time Wadley collected the contaminated blood because the collection itself did not invade any of his legally protected rights. Hence, Wadley's negligent act was not in itself "unlawful" as to Tom, and his cause of action accrued when he sustained damages. *Atkins*, 417 S.W.2d at 153. However, we agree with Wadley that Tom suffered damages when he received the blood transfusion because at that time he not only received the red blood cells that saved his life, he also received HIV. Tom's receipt of the virus was an invasion of his interest in his own bodily security that is protected against unintentional invasion. RESTATEMENT (SECOND) OF TORTS § 281 (1965). In other words, Tom's cause of action accrued the moment he received the virus because it was then that he sustained damage by becoming infected with what is currently a fatal disease. *Id.*

Consequently, we hold that Tom's cause of action is barred by the two-year statute of limitations contained in section 16.003(a) unless the discovery rule is both applicable to our case and available to the Beesons under our record.

### The Discovery Rule

The discovery rule represents an exception to the general rule that a cause of action accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Robinson*, 550 S.W.2d at 19. The discovery rule is a judicially constructed test that is used in determining when a plaintiff's cause of action accrued. *Moreno*, 787 S.W.2d at 351; *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex.1977). When applied, the discovery rule tolls the statute of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Moreno*, 787 S.W.2d at 351; *Weaver*, 561 S.W.2d at 794. Since the discovery rule is a plea in confession and avoidance of the limitations defense, the party asserting the rule must plead, prove, and secure favorable findings with regard to it. *Woods v. Mercer*, 769 S.W.2d at 518.

We first determine the applicability of the rule to our case. The supreme court has applied the discovery rule to a limited number of cases, including certain medical malpractice cases, in which the plaintiff did not, and could not, know of the injury at the time it occurred. *Moreno*, 787 S.W.2d at 351. It is undisputed in the case at bar that neither Tom nor his family knew or could know of his injury at the time it occurred; that a test to detect HIV antibodies did not exist until March 11, 1985; and that the blood at issue could not have been tested in 1983 for HIV and was never tested subsequently. Further, AIDS is an inherently undiscoverable disease because of its long latency period. *See* Woods & Thorton, *Deadly Blood: Litigation of Transfusion–Associated AIDS Cases in Texas*, 21 TEX.TECH.L.REV. 667,

723 (1990). We hold that the case at bar is the type to which the discovery rule may be applied.

■ We next determine whether this rule is available to the Beesons to toll the running of limitations. Wadley argues that the discovery rule does not toll the statute of limitations in this case because the Beesons failed to plead, prove, and secure findings on the discovery rule. *Woods*, 769 S.W.2d at 518. The Beesons first maintain that, if the discovery rule applies, they met their burden to plead facts that raise the discovery rule as a defense to the statute of limitations. *Black v. Wills*, 758 S.W.2d 809, 816 (Tex. App.—Dallas 1988, no writ). In both their original petition and their first amended original petition, the Beesons pleaded that, "[t]he blood supplied to Mr. Beeson was contaminated with the AIDS virus and transmitted such virus to Mr. Beeson, a fact learned by Thomas W. Beeson and his family through medical tests in June, 1987." We agree with the Beesons that they pleaded sufficient facts to put the discovery rule in issue in this case. We note that Wadley also failed to file any special exceptions to the pleadings; hence, it too has waived any pleading defects. TEX.R.CIV.P. 90.

■ Next, the Beesons argue that they met their burden of proof under the discovery rule. They contend that they conclusively established that Tom and his family did not discover that he had contracted AIDS until he showed symptoms in May 1987 and received the formal diagnosis in June. They assert that because they conclusively established the discovery rule, they had no need to request issues or to obtain favorable findings thereon. *Wright v. Gifford-Hill & Co., Inc.*, 736 S.W.2d 828, 834–35 (Tex.App.—Waco 1987, writ ref'd n.r.e.).

There is no evidence in this record that Tom and his family discovered his AIDS infection prior to May 1987. Wadley conceded in oral argument that the Beesons did not discover the infection until 1987, but it argued that, to toll the limitations period, the Beesons had to secure favorable findings that Tom's injury "with reasonable diligence could not have been discovered within the limitations period." We conclude that Wadley misstates the requirements of the discovery rule. The rule tolls the limitations period until the time that the plaintiff discovered, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Weaver*, 561 S.W.2d at 793–94. The issue, if preserved, is whether any evidence raises a fact question about when Tom reasonably should have discovered the nature of his injury. *Id.*

Wadley contends that Esther's testimony raised a fact question of when a reasonable person should have discovered Tom's infection. It relies on her testimony that she and Tom had discussed getting tested for AIDS because they knew "that they didn't have a test for the blood in [19]83 as such and that there was a possibility that he could have gotten it in the blood transfusion." However, in its motion for judgment n.o.v., Wadley alleged that the Beesons "did not adduce evidence at trial or request a jury question regarding when [they] discovered their cause of action." Wadley neither raised the issue of when the Beesons should have discovered through reasonable diligence Tom's injury nor argued this theory in its brief. We conclude that Wadley has not preserved its argument that there is a fact question about when Tom, as a reasonable person, should have discovered the infection.

Further, we also conclude that Tom's and Esther's general knowledge that there was a possibility that he had contracted AIDS from the 1983 blood transfusion, without more, amounted to no more than a scintilla of evidence on the issue of whether Tom should have investigated or made inquiry to see if he had in fact contracted HIV from that transfusion. There is no other evidence in the record to indicate that the Beesons discovered or should have discovered the infection prior to Tom's symptoms appearing in May 1987, and it is undisputed that Tom did not in fact discover that he had HIV until June 1987. Accordingly, we hold that the Beesons conclusively proved

under the discovery rule that their cause of action accrued at the earliest in May 1987 when they were first put on notice by Tom's symptoms of the nature of his injury. We further hold that, when the Beesons filed suit on April 21, 1989, they filed within the two-year statute of limitations period set forth in section 16.003(a) of the Texas Civil Practice and Remedies Code.

■ In the alternative, Wadley argues that Tom's cause of action is barred by the two-year statute of limitations in section 10.01 of the Texas Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT.ANN. art. 4590i, § 10.01 (Vernon Supp. 1992). Section 10.01 provides that no health care liability claim may be commenced unless suit is filed within two years from the occurrence of the breach. Wadley contends that it is entitled to assert this two-year statute of limitations as a bar to the Beesons' cause of action because it is a health care provider that provides services to patients through hospitals. Wadley's argument is premised on its qualification as a health care provider as defined in the Texas Medical Liability and Insurance Improvement Act. TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(3) (Vernon Supp.1992). A health care provider is defined as follows:

> any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care *as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof* acting in the course and scope of employment.

*Id.* (emphasis added). Wadley does not provide health care in any capacity listed in section 1.03(a)(3). Wadley also does not meet the definition of a hospital in section 1.03(a)(5). *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(5). Further, a health care liability claim is based on treatment, lack of treatment, or departure from accepted standards of medical or health care. TEX. REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1992). A blood bank does not provide medical or health care to the blood transfusion recipient. Thus, we con-clude that Wadley is not covered by the provisions of the Medical Liability and Insurance Improvement Act and cannot assert the limitations provision in section 10.01 to bar the Beesons' wrongful death and survival causes of action.

Finally, Wadley argues that Esther's and Bruce's causes of action are barred because their recovery is authorized only if Tom would have been entitled to bring suit. TEX.CIV.PRAC. & REM.CODE ANN. § 71.003(a) (Vernon 1986). This contention is untenable because we have overruled its premise. Tom is entitled to bring suit and, therefore, Esther and Bruce are authorized to recover under section 71.003(a). *Id.* Accordingly, we overrule Wadley's first point of error.

### B. Personal Injury Claims

In its second point of error, Wadley argues that the trial court erred in denying its motion for judgment n.o.v. because Esther's personal injury claim is barred by the applicable statute of limitations. Wadley contends that Esther's cause of action is time-barred because it was not brought until more than two years after the latest possible date that her cause of action accrued. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). The record reflects that Esther learned of her HIV infection in June 1987 and amended the pleading on June 5, 1990, to assert that Wadley's negligence proximately caused her personal injuries.

■ In appropriate circumstances, amended and supplemental pleadings relate back to the filing of the original pleading. TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986). Section 16.068 provides as follows:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly

based on a new, distinct, or different transaction or occurrence. *Id.* Thus, an amended pleading alleging a new cause of action relates back to the original filing and is not subject to a limitations defense if the original pleading was filed within the limitations period and if the amendment is not based on a wholly new, distinct, or different transaction. *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 163 (Tex. 1967); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Lathem v. Richey*, 772 S.W.2d 249, 255 (Tex.App.—Dallas 1989, no writ). Here, we have held that Tom's cause of action was filed within the limitations period. Therefore, we need only address whether Esther's personal injury claim filed in June 1990 is based on a new, distinct, or different transaction or whether it relates back to the original' pleading filed in April 1989.

 Wadley relies on *Harris v. Galveston County*, 799 S.W.2d 766 (Tex.App.—Houston [14th Dist.] 1990, no writ), and *Meisler v. Republic of Texas Savings Association*, 758 S.W.2d 878 (Tex.App.—Houston [14th Dist.] 1988, no writ), to argue that Esther's claim for personal injuries did not arise out of the same transaction as Tom's and that, therefore, she is barred by the statute of limitations. In *Meisler*, the original cause of action was for breach of a loan commitment, and the amended petition alleged breach of a deed of trust. The court held that the deed of trust cause of action did not relate back to the filing of the original petition because it was based on a separate and distinct transaction from that alleged in the original petition. *Meisler*, 758 S.W.2d at 882. The original petition in *Harris* alleged that medical malpractice occurred during surgery, and the amended petition alleged negligence occurring after surgery. The court concluded that the cause of action for post-operative negligence did not relate back to the filing of the original petition because it was based on a separate, new, and distinct transaction. Thus, the later filed negligence cause of action was barred by the statute of limitations. *Harris*, 799 S.W.2d at 769.

Under the facts of our case, however, Esther's personal injury cause of action is based on Wadley's negligence at the time of the blood donation on April 19, 1983. She does not assert that Wadley's negligence occurred at the unknown time of the sexual transmission of HIV from Tom to her. The original petition and the amendment concerning Esther's personal injury claim are based on the same transaction—Wadley's negligent collection of blood donations. Thus, we conclude that Esther's personal injury cause of action relates back to the filing of the original petition on April 21, 1989, and is not barred by the statute of limitations. Accordingly, we overrule Wadley's second point of error.

## CAUSATION

Wadley argues in its final point of error that the trial court erred in denying Wadley's motion for judgment n.o.v. because the evidence of causation is legally insufficient to support the jury verdict. Wadley contends that the Beesons failed to prove that Doe, the donor, would not have donated blood on April 19, 1983, if Wadley had implemented the screening procedures and blood tests advocated by the Beesons. The Beesons assert that there is competent evidence to support the jury's answers to the causation questions.

 Wadley's complaint raising legal insufficiency is a "no evidence" point of error. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In reviewing "no evidence" points, this Court considers only the evidence and inferences that tend to support the finding and disregards all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). If there is any evidence of probative force to support the finding, the point of error must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Accordingly, if there is more than a scintilla of evidence to support the jury's answers to causation, Wadley's no evidence challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

Proximate cause includes two essential elements: (1) foreseeability and (2) cause-in-fact. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 21 (Tex.1987); *McClure v. Allied Stores,* 608 S.W.2d 901, 903 (Tex. 1980). Both elements must be present, and both may be established by direct or circumstantial evidence. *McClure,* 608 S.W.2d at 903. Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by its negligent act. *Id.* Cause-in-fact means that the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *Id.*

The question of causation is a fact question for the jury. *Farley v. M.M. Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975). The jury has broad latitude to infer proximate cause from the evidence and the circumstances surrounding an accident especially when it is not possible to produce direct proof of proximate cause or lack of proximate cause. *Harris v. LaQuinta–Redbird Joint Venture,* 522 S.W.2d 232, 236 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.). In *LaQuinta–Redbird,* the court recognized that it was not possible in a drowning case to produce direct evidence that a person could have been rescued if a lifeguard or proper lifesaving equipment had been provided. *Id.* Nevertheless, the court concluded that there was probative evidence of a causal relation and of foreseeability and that the plaintiff was entitled to have a jury issue on proximate cause. *Id.* at 237. In such a case, the question of causation is for the jury, subject to a court of appeals review for factual sufficiency. *Thorenson v. Thompson,* 431 S.W.2d 341, 344 (Tex.1968). Because we have no factual sufficiency point, the jury's decision is binding if there is some evidence to support it. *Stafford,* 726 S.W.2d at 16. Although the jury cannot stack an inference upon an inference, the jury can draw numerous inferences based on a single fact situation. *McClure,* 608 S.W.2d at 904; *Farley,* 529 S.W.2d at 757.

Wadley argues that the Beesons' proof of causation is legally insufficient because they failed to prove that: (1) Tom was infected by a blood transfusion from Wadley rather than from other sources; (2) Doe would not have donated blood had a different acknowledgement form been used; (3) Doe would have answered affirmatively in April 1983 if directly questioned about his sexual preference, history, and practices, thereby resulting in his deferment as a blood donor; (4) Doe would not have given blood if different language had been used to describe high-risk groups on the AIDS information sheet; (5) the hepatitis B core antibody was an effective surrogate test for AIDS and that Doe would have tested positive to the test in April 1983, excluding his blood from use for transfusion; and (6) a reasonable blood bank could have foreseen that the use of semantic differences on the acknowledgement forms and AIDS information sheets, the refusal to use direct questions regarding sexual behavior, or the refusal to use the hepatitis B core antibody test would in reasonable probability present a danger to others.

The first five items complain of lack of evidence to prove cause in fact and the sixth complains of no evidence to prove foreseeability. We agree with the Beesons that lack of direct evidence on causation in this case does not amount to legally insufficient evidence of causation. Here, as in *LaQuinta–Redbird,* there is no direct proof of proximate cause or lack of proximate cause, and there is no way to prove by direct evidence that better procedures and donor education would have changed the result of Doe's visit to Wadley to donate blood in April 1983. Thus, we must examine the record to determine whether there is more than a scintilla of probative evidence of a causal relationship between the transfusion that Tom received and his HIV infection, and more than a scintilla that it was foreseeable that Wadley's conduct in April 1983 could lead to the sale of AIDS-contaminated blood.

We note that Wadley's arguments to support lack of evidence of causation are based in large part on evidence and inferences that do not support the jury findings, while we can consider only evidence and

reasonable inferences tending to support those findings. Thus we must disregard much of the evidence relied on by Wadley. *Responsive Terminal Sys., Inc.*, 774 S.W.2d at 668. Wadley also attacks the qualifications of the Beesons' expert witness, Dr. William O'Connor, and argues that his testimony cannot be considered in determining the legal sufficiency of the evidence. However, the Beesons assert that there is ample evidence to support the jury's findings based on the testimony of Dr. Norman Hill, Wadley's president and chief executive officer at the time of Doe's blood donation, and the testimony of other Wadley witnesses. We agree with the Beesons.

■ After a careful review of the entire record, we conclude that there is legally sufficient evidence to support the jury's finding that Wadley's negligence was a proximate cause of the Beesons' damages. The possibility of AIDS transmission through blood or blood products was raised in mid–1982 as a result of several AIDS cases among hemophiliacs. By January 1983, Wadley knew that AIDS was a "major blood banking issue"; that blood from homosexual or bisexual males should not be accepted under any circumstances; and that a "very significant" number of contaminated units of blood would be accepted if Wadley did not act appropriately. Wadley's written policy was that "donors who volunteer that they are gay" should not be permitted to donate blood. In practice, however, Wadley eliminated only "sexually active homosexual men with multiple sexual partners." Wadley knew that seventy to seventy-five percent of persons with AIDS were homosexuals and that it could eliminate seventy to seventy-five percent of the problems with AIDS-contaminated blood if it excluded all homosexual males as donors.

Wadley also was aware of statements on AIDS issued by the American Association of Blood Banks, the Community Council of Blood Centers, and the Centers for Disease Control in January and in March 1983. Both statements contained suggestions concerning questions for donor screening and recruitment. The January 1983 statement suggested that donor screening include specific questions concerning AIDS symptoms to identify members of high-risk groups, that donor recruitment should not target high-risk groups, and that direct or indirect questions about a donor's sexual preference were inappropriate and were justified only if they demonstrated clear-cut benefits. The March 1983 statement included a sample information sheet for distribution at the time of donation. The information sheet identified the high-risk groups, explained that AIDS may be spread through blood products and that there was no way to detect AIDS, and asked members of high-risk groups to voluntarily refrain from donating blood. It further required donors to sign an acknowledgment form stating that the donor had read and understood that members of the high-risk groups had been asked not to donate blood.

Wadley gave copies of the January and March 1983 statements to its donors and added a question to its donor source card to address symptoms indicative of AIDS. Linda Dianne Hall, Wadley's former associate administrator, testified that the donor source card was on a clipboard and that the joint statements and AIDS information sheet were placed on top of the card. Wadley stamped the back of the donor source card with the donor's acknowledgment that he had been provided with AIDS information. Hall explained that the donor screener had to inquire if the donor had read and understood the information before the donor signed the acknowledgment.

Wadley knew that the American Association of Blood Banks (AABB) recommended that prospective donors be asked directly whether they were a member of a high-risk group and that all those answering affirmatively be excluded. However, Wadley never directly asked donors if they were members of recognized high-risk groups or if they had close contact with such members. Wadley did not accept the AABB's recommended donor acknowledgment form or the Food and Drug Administration's "recommendations to decrease the risk of transmitting AIDS from blood donors," which included specific questions designed

to detect possible AIDS symptoms or exposure to patients with AIDS. Further, Wadley's donor acknowledgment was different from that developed by the AABB. The AABB form stated that the donor had read the AIDS literature and understood that members of high-risk groups were asked not to donate blood, whereas Wadley's form required the donor to initial the statement stamped on the back of the donor source card that the donor had been provided with AIDS information. A donor was not specifically asked if he had read and understood the AIDS information or if he was a member of a high-risk group.

Doe voluntarily donated blood at Wadley on April 19, 1983, and had given blood at Wadley about once a year without any problem since the early 1970's. Doe did not remember the donor screening procedures at Wadley in April 1983. Doe testified that he did not know that he was at high risk for AIDS, that he would never have given blood if he had known that he was at risk for AIDS, and that he always told the truth in response to Wadley's questions of him.[1] We do not know whether Doe signed the AIDS information acknowledgment because we do not have a copy of the back of the card.[2]

This evidence is some evidence that Wadley's screening procedure did not effectively educate donors and that it would have received direct answers from Doe if it had asked specific questions. The jury could reasonably infer that Wadley's failure to effectively educate Doe and to ask Doe specific questions caused him to donate blood rather than to defer. Further, the foregoing constitutes more than a scintilla of evidence to support a finding that Wadley, despite its knowledge about the dangers of AIDS-contaminated blood, failed to reject gay men; that donor screening was inadequate; and that these omissions were substantial factors in causing Tom's and Esther's HIV infections.

Likewise, there is evidence to support the Beesons' surrogate testing theory even if we discount their expert's testimony on this question. Wadley's own expert, Dr. Herbert Polesky, admitted that more than two out of three sexually active homosexual males would have been excluded from the donor population through the use of the hepatitis B core antibody test. This constitutes scientific proof that there was a sixty-seven percent chance that Doe would have been excluded if such test had been used.

There is also some evidence that Doe's blood contained AIDS. Wadley's own technical director, Jerry Staples, admitted that there was "strong evidence" that the blood Wadley accepted from Doe on April 19, 1983, was contaminated with AIDS. This statement was based on the fact that Doe's blood was broken into two components, with red blood cells given to Tom and fresh frozen plasma given to another recipient six months later, and that both Tom and the plasma recipient subsequently were diagnosed as HIV positive less than six months apart from one another.

In summary, our review of the evidence reveals that the jury could reasonably have concluded that Wadley's negligence was a substantial factor in bringing about the Beesons' injuries and without which no harm would have occurred. *McClure*, 608 S.W.2d at 903. The Beesons were not required to distinguish all possible inferences. They had to show only that the greater probability was that Wadley's negligent acts probably caused their injuries. *Id.* at 904. The record also contains more than a scintilla of evidence that Wadley reasonably should have anticipated the danger to others by its negligent acts. *Id.* at 903. We overrule Wadley's third point of error.

We affirm the judgment of the trial court.

---

**1.** Doe testified that he did not realize that he was gay until 1985. Thus, he could not say what he would have considered the truth had Wadley asked him in 1983 about his sexuality.

**2.** After five years, Wadley destroys the donor source cards; Wadley microfilms copies only of the front of the card.