

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00413-CV

———————————————————

AKT INVESTMENTS, INC., Appellant

V.

T JORDAN TOWING, INC., Appellee

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-298672-18

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I.  Introduction

In nine issues, Appellant AKT Investments, Inc. challenges the trial court's grant of Appellee T Jordan Towing, Inc.'s motion for summary judgment, the denial of its own motion for summary judgment, and the grant of a motion that permitted Jordan to withdraw deemed admissions.  Because of their random sequencing, we will not list the topic of each issue here but will itemize only our holdings.  In essence, we affirm much of what the trial court did and reverse on two narrow questions.

The dispute below centers on property owned by Jordan that AKT occupied over a period of years beginning in 2011 and ending in 2017.  AKT first sued Jordan in 2018, alleging that Jordan had purloined AKT's tax-identification information, had used that information when purchasing cigarettes for resale, and had then left AKT with the sales-tax liability for the purchases.  After a five-year interlude that included an appeal to this court, AKT amended its petition in 2023 to allege breach-of-contract, fraud, and breach-of-fiduciary-duty claims stemming from a lease-purchase agreement that AKT claimed it had entered into with Jordan.

The trial court's summary judgment decreed that AKT take nothing on any of the claims asserted in the 2018 and 2023 petitions (hereinafter the 2018 Petition and the 2023 Petition) filed by AKT.  To bring order to the analysis, we break down our holdings to address those that relate to the claims in the 2023 Petition, then the 2018 Petition, and then to those issues that remain.

We resolve the issues that relate to the claims in the 2023 Petition as follows:

- The trial court did not abuse its discretion by rejecting AKT's argument that deficiencies in Jordan's discovery responses removed the relation-back doctrine from the court's consideration in deciding whether limitations had run on the claims in the 2023 Petition.

- The trial court's conclusion that the claims made in the 2023 Petition did not relate back to the 2018 Petition for limitations purposes was correct.

- Though the trial court's judgment invalidated AKT's breach-of-contract claim, the trial court erred by awarding Jordan attorney's fees.

We resolve the issues that relate to the claims in the 2018 Petition as follows:

- The trial court properly granted a no-evidence motion for summary judgment on the claims, sans the fraud claim, made in the 2018 Petition.

- There is a fact question regarding whether the surviving fraud claim is barred by limitations, so we remand the fraud claim; this holding obviates the need to address several of AKT's contingent issues.

- Because we are remanding the fraud claim, we address the trial court's order permitting the withdrawal of deemed admissions and hold that the trial court acted within its discretion.

Finally, because the issues raised by AKT in its own motion for summary judgment did not survive the holdings set out above, the trial court did not err by denying that motion. Accordingly, we affirm in part, we reverse and render in part, and we reverse and remand in part.

## II. Factual and procedural background

We truncate our description of this case's background to avoid repetition of the detail contained in our analysis.

3

AKT claims that fourteen years ago, it entered into an agreement to purchase from Jordan a property formerly used as a gas station. AKT claims that it took possession of the property in 2011. A series of conflicts between AKT and Jordan arose over the next several years.

AKT asserts that because of licensing and physical deficiencies in the property, it had to immediately begin investing funds "to bring the Gas Station Property up to code, address violations, pay TCEQ penalties, and clear past gas debts to resume gas deliveries to the premises which was . . . to be operated as a gas station and car dealership." AKT also claims that it paid Jordan to ensure that liens were not filed against the property. And when AKT demanded "finalization of the transfer," it learned of undisclosed liens and judgments, which Jordan promised to remove in order to clear title to the property.

Next, AKT received a notice of delinquent sales taxes from the Comptroller; AKT claims that it later learned that the delinquent sales taxes had resulted from Jordan's unauthorized use of AKT's tax-identification number. The Comptroller ultimately held AKT liable for payment of the taxes.

The tale continued with Jordan's filing bankruptcy and the principal of AKT leaving the country to care for his ailing mother. AKT claims that while its principal was out of the country, Jordan locked it out of the premises.

After these developments, the parties' relationship reached an impasse. AKT's brief describes that impasse as follows:

A subsequent forcible[-]entry[-]and[-]detainer case was filed by T Jordan Towing, Inc.; however, the [j]ustice [c]ourt ruled in favor of [AKT] on August 4, 2015[,] finding that the forcible entry and detainer was not warranted and that the entry and lockout had been unlawful.

Without prejudice to its claims to the property or reimbursement of its investment in the Gas Station Property, on April 1, 2016, AKT executed a temporary residential lease of the premises for an under-market rate and formally relocated its business from the Gas Station Premises in March of 2017. [Record references omitted.]

Litigation commenced in 2018, with AKT filing its 2018 Petition in which it sued Jordan for claims that related to the misuse of AKT's tax-identification number and the improper tax liability that AKT claimed had resulted. Three years later, the trial court rendered a judgment that AKT take nothing and then signed an order dismissing AKT's claims for want of prosecution. That judgment and order were appealed to this court. Our judgment reversed the trial court's disposition of the case and remanded the case to the trial court. *See AKT Invs., Inc. v. T Jordan Towing, Inc.*, No. 02-22-00058-CV, 2023 WL 415515, at *9 (Tex. App.—Fort Worth Jan. 26, 2023, pet. denied) (mem. op.).

Most of this case's procedural background revolves around events that occurred after this court's remand. Shortly after our mandate issued, AKT filed its amended 2023 Petition that expanded the scope of the claims from those relating to the misuse of AKT's tax-identification number and the assessment of the sales-tax liability to breach of the lease-purchase agreement. The damage claims expanded to embrace measures related to the claims made in the later petition.

5

When the litigation was revived with the filing of the 2023 Petition, Jordan retained new counsel and began responding to discovery that had previously been propounded and amended its answer to allege affirmative defenses to the 2023 Petition, including the defense of limitations.

The parties also filed motions for summary judgment. Jordan first filed a traditional and no-evidence motion for summary judgment that it later amended. AKT filed a traditional motion for summary judgment. Both parties responded to the other's motions for summary judgment. Also, the day that AKT responded to Jordan's amended motion, Jordan moved to withdraw the admissions referenced in AKT's response.

The trial court heard the parties' motions for summary judgment and the motion to withdraw the deemed admissions. The trial court signed orders that denied AKT's motion for summary judgment and granted the motion to withdraw the deemed admissions. The trial court also signed an order that granted Jordan's amended motion for summary judgment and eradicated AKT's claims. Specifically, it dismissed with prejudice AKT's claims for (1) breach of fiduciary duty, (2) fraud, (3) unjust enrichment, (4) business disparagement, (5) promissory estoppel, (6) breach of contract, and (7) constitutional mechanic's lien. The judgment also awarded Jordan attorney's fees. AKT filed a notice of appeal challenging both of the trial court's judgments and the order withdrawing the deemed admissions.

# III. Analysis

## A. The trial court did not err by dismissing the claims made in the 2023 Petition.

The sequencing of AKT's appellate issues is disjointed. We will organize our consideration of the issues presented to address issues that interrelate. Initially, we will focus on issues that impact the claims that AKT made in its amended 2023 Petition. Much of the discussion centers around the relation-back doctrine found in Section 16.068 of the Civil Practice and Remedies Code and whether the claims made in the 2023 Petition relate back for limitations purposes to AKT's 2018 Petition. In part of its second issue, AKT argues that Jordan forfeited an argument that the claims in the 2023 Petition did not relate back because it failed to disclose the relation-back doctrine was a theory that formed a component of its limitations defense and also failed to disclose the facts related to that theory. After we conclude that the relation-back doctrine was properly considered by the trial court, we address its application when considering AKT's sixth issue and hold that previously unpleaded claims, which were raised for the first time in the 2023 Petition, do not relate back to AKT's prior petition and are barred by limitations. This brings us to AKT's eighth issue with a background that AKT's only breach-of-contract claim was made in its 2023 Petition, and we hold that it is one of the claims barred by limitations. In its eighth issue, AKT argues that even if its breach-of-contract claim made in the 2023 Petition was barred

by limitations, Jordan is not entitled to recover attorney's fees. We agree and hold that the trial court's award of attorney's fees to Jordan was error.

> **1.** **We reject AKT's argument that Jordan's failure to disclose a relation-back theory and facts relating to that theory in its disclosure responses foreclosed the trial court from considering whether the claims made in AKT's 2023 Petition related back to its 2018 Petition for limitations purposes.**

A central question before us is whether the claims made by AKT in its 2023 Petition were saved from the bar of limitations because they related back through an application of Civil Practice and Remedies Code Section 16.068 to the claims made in its 2018 Petition. In its second issue, AKT argues that the relation-back doctrine was not before the trial court because Jordan failed to disclose that it would rely on a contention that the claims in the 2023 Petition did not relate back to the 2018 Petition.[1] First, this argument misperceives the dynamics of the burdens associated with the relation-back doctrine. Jordan pleaded that the claims in the 2023 Petition were barred by limitations. Because the relation-back doctrine embodied in Section 16.068 is a tolling provision, the burden was on AKT's shoulders to assert that the claims in the later petition related back to the former. It was not Jordan's responsibility to anticipate that AKT would invoke the doctrine and then respond to that assertion by disclosing facts to negate its application. Second, the sanction

---

[1]Whether the trial court erred by considering the relation-back doctrine because of alleged discovery abuse is reviewed under an abuse-of-discretion standard. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) ("The scope of discovery is largely within the discretion of the trial court.").

provision that AKT invokes seeks to exclude evidence and not foreclose the use of legal theories. Finally, because Jordan relied on AKT's petitions to support its summary-judgment motion, AKT's attempt to claim that it was unfairly surprised by Jordan's summary-judgment evidence—AKT's own petitions—falls flat.

Jordan unmistakably asserted limitations as a defense. Jordan in its original answer pleaded the following: "[Jordan] asserts that the applicable statute of limitations for the claims made by [AKT] has passed." Its first amended answer pleaded the same. In the second amended answer filed after AKT had amended its petition in 2023 to add additional claims, Jordan pleaded that "[AKT's] claims are barred, in whole or in part, by the applicable statute of limitations." *See* Tex. R. Civ. P. 94 (listing statute of limitations as an affirmative defense that "a party shall set forth affirmatively").

AKT does not argue that it was ignorant of Jordan's pleading a limitations defense. *See EnVen Energy Corp. v. Dunwoody*, No. 14-21-00699-CV, 2023 WL 2981800, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2023, pet. denied) (mem. op.) (noting that a disclosure response that incorporates a pleading is sufficient). Instead, AKT argues that Jordan failed to disclose that it would argue that the claims made in AKT's 2023 Petition would not relate back to AKT's 2018 Petition—in other words, that Jordan would challenge AKT's claim that Section 16.068 had salvaged AKT's later claims from the bar of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann.

9

§ 16.068 (specifying conditions when a claim made in an amended petition will relate back to a prior pleading for limitations purposes).

"Section 16.068 is a tolling statute that stops the clock at the time the original petition is filed, if filed within the limitations period." *Rodriguez v. JPMorgan Chase Bank, N.A.*, No. 04-14-00342-CV, 2015 WL 3772110, at *4 (Tex. App.—San Antonio June 17, 2015, pet. denied) (mem. op.). In a summary-judgment context, such as this case, a defendant may have the summary-judgment burden to negate a tolling doctrine raised by the plaintiff, but a defendant only has the burden to negate tolling grounds that are asserted by the party relying on the ground. As noted in *Draughon v. Johnson*,

> [A] plaintiff's assertion that the statute of limitations was tolled falls within the category of issues affecting the running of limitations on which the moving defendant bears the burden. To obtain traditional summary judgment on the ground that the limitations period expired before the plaintiff brought suit, the defendant must *conclusively negate any tolling doctrines asserted.*

631 S.W.3d 81, 92 (Tex. 2021) (emphasis added). The supreme court inventoried a host of authorities establishing that the burden to negate a tolling doctrine falls on the defendant in a summary-judgment context but made clear that the burden arises only after the plaintiff asserts a tolling doctrine. *Id.* at 90–91.

Thus, AKT is arguing that Jordan should have anticipated that AKT would assert the relation-back tolling doctrine and should have asserted a factual basis and an explanation as to why it would not apply. The disclosure rule requires only "the legal theories and, in general, the factual bases of the responding party's claims or

*defenses* (the responding party need not marshal all evidence that may be offered at trial)." Tex. R. Civ. P. 194.2(b)(3) (emphasis added). AKT's argument goes too far; it requires a defendant to not only state its *defense* but also to disclose grounds that toll the running of limitations even though not yet raised by a plaintiff. Though AKT characterizes the relation-back doctrine as a "defensive theory," that is a misnomer; it is a doctrine that AKT as plaintiff was obligated to initially assert. AKT never raised this tolling doctrine until the issue came to the forefront in Jordan's summary-judgment motion.[2] We hold that Jordan's disclosure responses were not deficient for the failure to identify an unasserted legal theory that was AKT's burden to raise; Jordan's defense was limitations, and AKT does not argue that this defense was undisclosed.

Further, as we have previously held, a flaw in a disclosure does not deprive a party of the entire legal theory; specifically,

> Rule 193.6[3] is generally geared towards the exclusion of evidence, not entire legal theories. "Although it might be possible that untimely

---

[2]It was not mentioned by AKT in its disclosure of its legal theories.

[3]Rule 193.6 states the following:

(a) Exclusion of evidence and exceptions. A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

supplemented or amended discovery responses could cause surprise concerning the issues in a case, [R]ule 193.6(a) relates to the discovery of evidence . . . ." *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 862 (Tex. App.—Dallas 2006, no pet.). "[I]ts principal purpose—and most common application—is to protect a party from surprise concerning the existence of undisclosed evidence—not issues." *Id.* Thus, we have held that "properly ple[aded] claims for affirmative relief, as opposed to withheld evidence, are not abandoned or waived by a party's failure to expressly identify those claims in a response to a request for disclosure." [*In re*] *J.N.*, [No. 02-17-00179-CV,] 2017 WL 3910910, at *3 [(Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.)] (quoting *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs.*, 346 S.W.3d 172, 180 (Tex. App.—Amarillo 2011, pet. denied)); *accord Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 431 (Tex. App.—Dallas 2011, pet. denied). "[T]here is nothing in the case law linking a failure to respond to discovery to an abandonment of a claim[.]" *Bundren*, 347 S.W.3d at 431 (quoting *Killam Ranch Props., Ltd. v. Webb Cnty.*, No. 04-08-00105-CV, 2008 WL 4958452, at *2 (Tex. App.—San Antonio Nov. 19, 2008, no pet.) (mem. op.)).

---

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) Burden of establishing exception. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

(c) Continuance. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

Tex. R. Civ. P. 193.6.

*Prescod v. Tkach*, No. 02-21-00162-CV, 2022 WL 246858, at *7 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.). In *Prescod*, we held that the legal theories come from the pleadings. Here, there is no question that Jordan pleaded limitations.

In *Prescod*, we also rejected an argument that a party could claim it was surprised by evidence used in support of a summary-judgment motion when that evidence was a party's own pleadings. *Id.* ("Put differently, [a]ppellants could hardly be surprised by their own court filings when those filings were used to establish basic propositions— such as when they filed suit—for purposes of a limitations defense that was already plainly stated in [appellee's] amended answer and motion for summary judgment."). Here, the evidence that Jordan's summary-judgment motion relied on was the original and amended petitions *of* AKT.

The trial court did not abuse its discretion by deciding that the disclosure deficiency raised by AKT did not foreclose consideration of the relation-back doctrine. We overrule the portion of AKT's second issue challenging the trial court's consideration of the relation-back doctrine.[4]

---

[4]AKT also claims in its second issue that it suffers from the untimely disclosure of Sara Aldiab as a fact witness. Ms. Aldiab described herself as Director and President of Jordan and an owner of her deceased father's shares in the company. Ms. Aldiab's role in Jordan was identified in a transfer of ownership of Jordan and was also identified in the verification of interrogatory responses as an "authorized representative of T Jordan Towing, Inc." Her identity was disclosed in a disclosure response as follows:

**2.    The claims made by AKT in its 2023 Petition do not relate back to its 2018 Petition and are barred by limitations.**

We next move to AKT's sixth issue, which further deals with the relation-back doctrine.  In the context of Jordan's amended motion for summary judgment, the parties litigated the question of whether AKT's claims in its 2023 Petition related back to the 2018 Petition for limitations purposes.  We agree that they do not and that the causes of action pleaded in the 2023 Petition are barred by limitations.

**a.    The 2018 Petition**

The entirety of the factual allegations in AKT's 2018 Petition are as follows:

---

Sara Aldiab
c/o Lovelace Law, P.C.
1601 8th Avenue
Fort Worth, Texas 76104
(817) 953-9656
Representative of T Jordan Towing, Inc.

AKT asks that we "exclude . . . any testimony provided by Ms. Aldiab in connection with this appeal."  Ms. Aldiab's testimony was not used in support of Jordan's motion for summary judgment, but her affidavit was attached to Jordan's response to AKT's motion.  We resolve AKT's issue with respect to that motion without referencing Ms. Aldiab's affidavit.  Also, as a general proposition, AKT apparently knew of Ms. Aldiab's role with Jordan before the disclosure and thus lacked the ability to claim that it was surprised by her disclosure.  *See Brunelle v. TXVT Ltd. P'ship*, 198 S.W.3d 476, 479–80 (Tex. App.—Dallas 2006, no pet.) (holding that party was not unfairly surprised or prejudiced by failure to disclose when opposing party knew witness could have been potential witness).  Second, she was disclosed in a disclosure response filed a month before the end of the discovery period.  We therefore overrule the remainder of AKT's second issue.

14

Defendant, T JORDAN TOWING INC, by and through its agent, HAITHAM M. ALDIAB,[5] was the landlord, lessor, [and] seller of the property to Plaintiff, AKT INVESTMENTS INC. [Jordan] has access to the property of [AKT]. [Jordan] began purchasing wholesale cigarettes for sale, using both [AKT]'s business name AKT INVESTMENTS INC. and the State of Texas tax [ID] number, for the purchase of these cigarettes without [AKT's] knowing and specifically without [AKT's] permission. [Jordan] never paid the state tax to the Comptroller of Texas for the cigarettes[] and never gave the money for the state tax to [AKT] to pay the state tax. The Texas State Comptroller [h]as punished [AKT] for the wrongdoings of [Jordan] and has forced a judgment and tax liens on [AKT] in the amount of approximately $60,000.00.

The petition goes on to assert a fraud claim predicated on Jordan's owner's false representation that "he needed a key to the premises to maintain the property during the lease-purchase period of their contract." The petition alleges that the damages from this fraudulent representation arose from Jordan's using

the key to gain access to the corporate information of [AKT] and [Jordan's] us[ing] that information to cause harm to [AKT] by specifically purchasing approximately $163,511.00 worth of wholesale cigarettes from April 1, 2011[,] to December 1, 2013, without [AKT]'s knowledge or permission[] and wi[th]out paying the state tax for the cigarettes[] issued by the Texas State Comp[tr]oller's office, resulting in a tax assessment and judgment against [AKT] in the amount of a total of approximately $60,000.00.

The petition next alleges a business-disparagement claim because "[Jordan] had no privilege to use either [AKT]'s business or business identity or business tax[-] identification number." Then the petition alleges a breach-of-fiduciary-duty claim because a lessee–purchaser relationship between the parties created a fiduciary

---

[5]The record notes that he was also known as Tom Diab, so sometimes he is referenced as Mr. Diab.

15

relationship and because "[Jordan] breach[ed] his fiduciary responsibility by using his access to gain corporate information of [AKT]'s business[] and falsely used that information to benefit [itself] and cause loss to [AKT]." Finally, the 2018 Petition alleges that "[Jordan] was unjustly enriched by using [AKT]'s corporate information to make a profit at [AKT's] expense, in the amount of approximately $60,000.00."

### b. The 2023 Petition[6]

Five and a half years after filing the 2018 Petition, AKT filed its first amended petition—the 2023 Petition. Embedded within the factual allegations of the 2023 Petition were the original allegations about cigarettes and sales taxes, but these allegations were now surrounded with allegations that Jordan had repudiated an agreement with respect to the property and that AKT should recover for improvements made during its occupancy of the property:

> 9. Defendant, T JORDAN TOWING INC, by and through its agent, HAITHAM M. ALDIAB, was the landlord, lessor, [and] seller of the property to Plaintiff, AKT INVESTMENTS INC. [Jordan] entered into a Lease Purchase Agreement for the lease and purchase of real property located at 5317 Mansfield Highway, Suite 101, Fort Worth, Texas, 76119 (hereinafter the "Premises") beginning sometime in early 2011. A commercial lease agreement containing the terms of the lease portion of the agreement was prepared and provided to AKT by T Jordan and AKT was asked to take up residence on the Premises, which it did with the Landlord's express consent and permission. As a commercial Tenant, AKT was entitled to the quiet enjoyment of the Premises and to use the Premises as a car lot.

---

[6]AKT also filed a second amended petition, but the argument before us and the trial court did not turn on this petition. At the hearing on the motion for summary judgment, AKT stated that the second amended petition, which was filed immediately before the hearing, abandoned its business-disparagement and mechanic's-lien claims.

10. At the time AKT moved onto the Premises[,] additional work and construction was necessary to conform the Premises to its intended use as a car lot. AKT engaged the services of a number of contractors who began work on the location bringing the property up to code and obtaining certificates of occupancy for the Premises. In addition, AKT was regularly approached by T Jordan and asked to pay for various items that served as a cloud on [Jordan's] title to the property.

11. Sometime starting in April of 2011, Keyvan Moslemi[,] the principal for AKT[,] was called overseas for a family emergency. During this time period[, Jordan] had retained access to the Premises by retaining a key to the Premises and subsequently accessed the Premises and appropriated AKT's sales[-]tax[-]identification information stored within the Premises. Using this property, obtained in breach of the lease agreement and the covenant of quiet enjoyment, [Jordan] began purchasing wholesale cigarettes and other items for sale, using the name AKT INVESTMENTS INC. as well as AKT's State of Texas tax [ID] number. Each of these purchases was made without the knowledge or consent of [AKT]. [Jordan] failed and refused to pay the state tax to the Comptroller of Texas for taxed products[] and refused to pay [AKT] the state tax due. As a result[,] The Texas State Comptroller ordered AKT to pay the sum of approximately $60,000.00 in sales taxes for goods received and sold by T Jordan and/or its affiliates.

12. When Mr. Moslemi returned from overseas later in 2011[,] he discovered that T Jordan had leased the Premises to another party. AKT sought and obtained the help of the constable to evict them from the Premises[,] but in subsequent discussions with T Jordan, it stated that it was repudiating the sales obligation that had been a key part of the agreement on which AKT had leased the Premises and invested funds in repairing the Premises to bring it up to code.

The 2023 Petition alleged a fraud claim based on representations beyond those

made in the 2018 Petition:

[Jordan] represented to [AKT] a) that he needed a key to the premises to maintain the property during the lease-purchase period of their contract, b) that T Jordan was in agreement regarding the terms of the Lease

17

Purchase Agreement for the Premises, and c) that AKT was the tenant of the Premises.

The breach-of-fiduciary-duty claim expanded from one based on access to corporate information into "[Jordan] further represented that it was joining with [AKT] in the joint development of the Property." And the 2023 Petition included a new breach-of-contract claim that again folded the prior claim into the allegation but then expanded into the new claims made in the 2023 Petition:

> [AKT] would further show and allege that [Jordan] breached it[]s lease[-] purchase agreement with [AKT]. [AKT] would show that under a lease[-]purchase agreement it had the right to 1) quiet enjoyment of the Premises[] and 2) the right to purchase the Premises. [Jordan] breached these obligations when it accessed the Premises[;] took [AKT]'s tax ID information to use for it[]s own benefit[,] as well as when it leased the Premises to a third party[;] and finally when it failed and refused to sell the Premises to the [AKT]. [AKT] was damaged by each of these breaches.

Finally, the 2023 Petition itemized its damages to go far beyond the claim in the 2018 Petition for $60,000 in damages:

> 31. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, AKT INVESTMENTS INC., was caused to suffer actual monetary loss, and to incur the following damages:
>
> > a. Approximately $60,000.00 in back taxes and penalties for use of [AKT]'s Tax ID;
> >
> > b. The cost and expense of all of [Jordan's] debts paid by [AKT] on representation that the failure to pay such debts would cloud [AKT]'s potential title to the Property;
> >
> > c. The extent to which [Jordan] was enriched by [AKT]'s lease and improvements of the Property including based on representations made to third parties;

18

d. The exten[t] of improvements made to the Premises by [AKT]; [and]

e. All consequential damages incurred by [AKT] as a result of the premature termination of the lease purchase agreement including damages to business and cost to relocate.[7]

Apparently, the damages alleged in the 2023 Petition were known to AKT before the filing of even the 2018 Petition because its brief tells us that the parties' relationship ended in 2017:

Without prejudice to its claims to the property or reimbursement of its investment in the Gas Station Property, on April 1, 2016, AKT executed a temporary residential lease of the premises for an under-market rate and formally relocated its business from the Gas Station Premises in March of 2017.

### c. We detail Jordan's motion for summary judgment and AKT's response.

Jordan filed a first amended motion for summary judgment that argued, among other grounds, that the claims in the 2023 Petition that expanded from those in the 2018 Petition were barred by limitations.[8] The motion categorized the claims in the 2023 Petition beyond those relating to the cigarettes and sales taxes as "New Allegations" and raised the ground that they were barred:

---

[7]Again, at the hearing on the motions for summary judgment, AKT abandoned its claims for business disparagement and for mechanic's liens.

[8]Jordan noted that common law fraud is governed by a four-year statute of limitations. *See Williams v. Khalaf*, 802 S.W.2d 651, 653, 656–57 (Tex. 1990) (op. on reh'g). Unjust enrichment is governed by a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870–71 (Tex. 2007).

[B]ecause AKT's New Allegations were ple[aded] more than ten years[ after they had occurred], and [were] ple[aded] for the first time over seven years [after] each New Allegation was discovered, each of AKT's causes of action are barred by limitations to the extent that they rely on those New Allegations. Put another way, *each of AKT's causes of action are barred by limitations to the extent that they rely on any factual allegation other than its allegation that Jordan used AKT's corporate information and tax[-] identification number to purchase cigarettes without paying the applicable taxes.* Accordingly, Jordan requests the [c]ourt grant summary judgment against each of AKT's claims to the extent they rely on new facts alleged in . . . AKT Investments, Inc.'s First Amended Original Petition and Request for Disclosure.

Jordan's motion also raised a ground that the new causes of action alleged in the 2023 Petition were barred by limitations.[9] The motion asserted that there was no controversy on when the causes of action accrued: "AKT also judicially admits to discovering all the New Allegations stated in its 2023 Amended Petition no later than April 1, 2016, when AKT signed a rental agreement for[] the Property—*over seven (7) years before amending* its pleading to include its New Allegations."

AKT responded to Jordan's summary-judgment grounds without challenging Jordan's contentions about when the causes of action in the 2023 Petition accrued or the terms of the applicable statutes of limitations. Instead, AKT argued that Jordan was prevented from arguing that the claims in the 2023 Petition did not relate back to the 2018 Petition because of deficiencies in Jordan's disclosure response—a claim that

_____

[9]Jordan noted that promissory estoppel is governed by a four-year statute of limitations. *See Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Breach of contract is also governed by a four-year statute of limitations. *Id.*; *see Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

we have addressed and rejected. Then AKT itself invoked the relation-back doctrine and argued that the claims were sufficiently related because "the original petition filed in this matter discloses that the transaction at issue was the nature of the lease[-] purchase relationship between the parties."

> ### d. We set forth why we reject AKT's contention that the claims made in the 2023 Petition relate back to the 2018 Petition.

It is apparently AKT's theory that because the 2018 Petition mentioned that the parties stood in a "landlord, lessor, [and] seller" relationship, any amended pleading that also involved that relationship—no matter how disparate the facts and claims later alleged were from those of the original claims—relates back to the prior pleading. The tie that AKT's argument relies on is too tenuous.[10]

---

[10]The standards of review that we follow to review the trial court's summary-judgment rulings on a traditional motion for summary judgment are as follows:

> We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgment are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. . . .

> When reviewing either a traditional or a no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard

AKT relies on Section 16.068 of the Civil Practice and Remedies Code, which provides that

> [i]f a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code Ann. § 16.068.

In turn, the El Paso Court of Appeals established the parameters of Section 16.068's sweep:

> Section 16.068 provides that new facts or claims raised in a subsequent pleading relate back to a timely filed pleading and are not barred unless the amendment or supplemental pleading "is wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code Ann. § 16.068. An original pleading tolls the limitation period for claims asserted in subsequent, amended pleadings as long as the amended pleading does not allege a wholly new, distinct, or different transaction. *Alexander v. Turtur & Assoc*[*s.*], 146 S.W.3d 113, 121 (Tex. 2004). A transaction is defined as a set of facts that gives rise to the cause of action premised thereon. *Tex*[.] *Disposal Sys*[.] *Landfill, Inc. v. Waste* [*Mgmt.*] *Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied.).

*Walker v. Presidium, Inc.*, 296 S.W.3d 687, 695 (Tex. App.—El Paso 2009, no pet.) (footnote omitted).

---

> evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310.

*Luminex Corp. v. Hiller*, No. 02-23-00256-CV, 2024 WL 4293381, at *3 (Tex. App.—Fort Worth Sept. 26, 2024, no pet.) (mem. op.).

The case law applying what constitutes a transaction for purposes of Section 16.068 requires more for a claim to relate back than the parties simply having some underlying relationship and instead looks to how closely the facts underlying the original and amended claims relate to one another. As examples, we set forth the following:

- The supreme court in *Alexander* dealt with claims arising from an attorney–client relationship. 146 S.W.3d at 121–22. The first claim brought against the lawyers related to the mishandling of an adversary proceeding in a bankruptcy court. *Id.* Later, a claim was filed that involved advice about the sale of cattle. *Id.* The supreme court

  > agree[d] with the court of appeals that [appellee]'s claim against [appellant] and his firm for mishandling its adversary proceeding in bankruptcy court alleges a transaction [that] is distinct and different from the . . . subsequent complaint in the Second Amended Petition that [appellant] negligently induced it to sell its cattle at "fire sale prices."

  *Id.* at 122.

- In *CHRISTUS Health Gulf Coast v. Carswell*, the supreme court dealt with whether a widow's claim that her husband's body was mishandled after his death related back to a premortem medical-malpractice claim. 505 S.W.3d 528, 538–39 (Tex. 2016). The supreme court held that the postmortem fraud claims did not relate back to the premortem medical-malpractice claims because

  > [i]t is apparent from what we have set out above that the facts underlying [appellees'] pre[]mortem medical[-]malpractice claims (1) are separated in time from the facts underlying the claim for damages based on post[]mortem fraud, (2) are based on facts different and distinct from those underlying the fraud claim, and (3) involve a different set of occurrences from that

23

underlying the fraud claim. The acts and omissions underlying the medical[-] malpractice claims allegedly caused [appellee's] death. The acts underlying the post[]mortem claim did not, and indeed could not, have had any causal relationship to his death.

*Id.*

- The Dallas Court of Appeals dealt with a question regarding whether a hospital patient's claims—that the hospital care that he had received while he was a cardiac patient had caused skin ulcers—were related to a prior claim that was based on the cardiac care. *Brewster v. Columbia Med. Ctr. of McKinney Sub., L.P.*, 269 S.W.3d 314, 317–18 (Tex. App.—Dallas 2008, no pet.). *Brewster* held that the two claims were not a part of the same transaction:

    > "A 'transaction' is defined as a set of facts that gives rise to the cause of action premised thereon." *Tex*[.] *Disposal Sys. . . .* , 219 S.W.3d [at] 587 . . . . While close in time, however, the conduct which resulted in skin ulcers differs from the conduct which resulted in the cardiac claims. *Harris v. Galveston* [*Cnty.*], 799 S.W.2d 766, 769 n.7 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (while surgery and postoperative care occurred very closely in time, they are based upon separate transactions); *see also Bratcher v. Boeke*, 207 S.W.3d 431, 432 (Tex. App.—Dallas 2006, no pet.) (placement of denture and installation of dental implants were not part of the same transaction or occurrence); *J.K.* [*&*] *Susie* [*L.*] *Wadley* [*Rsch.*] *Inst.* [*&*] *Blood Bank v. Beeson*, 835 S.W.2d 689, 697 (Tex. App.—Dallas 1992, writ denied) (wife's claim in amended petition relates back to decedent's claim because both arose from the same blood transfusion).

    *Id.*

- The El Paso Court of Appeals dealt with whether a claim for injuries suffered in an accident while driving a rental car was sufficiently related to a subsequent claim that the rental-car company had breached its rental contract by refusing to pay the plaintiff's claims relating to the accident

and had mispresented the coverage that it had provided. *Walker*, 296 S.W.3d at 695. The plaintiff tried to establish that they all related to the same rental transaction. That was not enough of a nexus; "[b]ecause the breach[-]of[-]contract and extra-contractual claims d[id] not arise out of the same transaction as the negligence action, those claims d[id] not relate back to the original petition." *Id.*

- The Dallas Court of Appeals dealt with another set of claims arising from an attorney–client relationship in *Thomas v. Carnahan Thomas, LLP*, No. 05-11-01615-CV, 2014 WL 465818, at *9 (Tex. App.—Dallas Feb. 4, 2014, pet. denied) (mem. op.). The question in *Thomas* was whether a subsequent breach-of-fiduciary-duty claim was sufficiently related to a prior legal-malpractice claim. *Thomas* held that

    > [t]he breach[-]of[-]fiduciary[-]duty claim, as [appellant] describes it, is that the Attorneys instructed him to violate non[]compete agreements, which they had failed to overturn, for the purpose of insisting that [appellant] pay them even though they had not achieved the fee contingency defeating the non[]competes. However, these facts and this claim were not alleged until the third amended petition on November 15, 2010. Rather, the first three petitions were focused on the following: (1) the alleged failure of the Attorneys to add the produce[-]distribution companies to the Dallas district[-]court lawsuit; (2) the alleged failure to file the non[]compete claims in arbitration as required by the employment agreements; and (3) the alleged failure to move to compel arbitration in the Pennsylvania case. Thus, on the face of the pleadings, the breach[-]of[-]the[-]fiduciary[-]duty claim is wholly based upon and grows out of a new, distinct, or different transaction or occurrence than the legal[-]malpractice claim.

    *Id.* at *8.

The cases that AKT relies on establish a much closer relationship between claims than that the parties had some underlying relationship that tangentially related to the original and amended claims. The first case relied on by AKT involved the

25

question of whether a claim for breach of an employment contract involved the same transaction as a claim that the same contract was fraudulently induced. *C.F. S. Region, Inc. v. Marshall*, 787 S.W.2d 471, 473 (Tex. App.—Houston [14th Dist.] 1990, no writ). The transactions were the same because "[t]he contract action [sought] damages due to the appellant's failure to abide by the contract[] and [because] the action for fraud [sought] damages relating to the inducement to enter into the contract." *Id.* Next, AKT cites an opinion that in one sentence shows the interrelation between the claims that were made in various pleadings: "The conclusion seems inescapable that a suit seeking to construe a title[-]conveyance document, and a counterclaim alleging that one party misrepresented what was being conveyed by the title[-]conveyance document, arose from the same transaction." *Barraza v. Koliba*, 933 S.W.2d 164, 167 (Tex. App.—San Antonio 1996, writ denied) (op. on reh'g). Finally, AKT cites *SJW Prop. Com., Inc. v. Sw. Pinnacle Props., Inc.*, 328 S.W.3d 121, 145 (Tex. App.—Corpus Christi–Edinburg 2010, pet. denied) (op. on reh'g), *abrogated on other grounds by Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015). Though AKT describes *SJW* as most instructive, the opinion applied Section 16.068 to the substitution of a plaintiff to cure a capacity issue. *Id.* at 145–46. Because of the interrelationship between the original plaintiff and the substituted plaintiff, the claims related back to one another. *Id.* We find no guidance in *SJW* to apply to the issues before us.

Here, AKT relies on too thin a filament for the 2023 Petition to relate back to the 2018 Petition. The 2018 Petition was based on a transaction that alleged that

26

Jordan had stolen corporate information and had used it to purchase cigarettes and had then left AKT holding the bag for the sales taxes on the purchases. The relationship between Jordan and AKT as "landlord, lessor, [and] seller of the property" had one impact on the claims: it was the excuse that Jordan used to obtain a key and thus access AKT's corporate information. But that fact was only ancillary to the facts upon which the 2018 Petition's transaction was based.

The 2023 Petition, for obvious reasons, tried to mesh all AKT's claims—new and old—into an indistinguishable lump. But the fact remains that the additional claims in the 2023 Petition are radically different from those in the 2018 Petition. The 2023 Petition alleges that the parties had a specific agreement that created rights in AKT. In accordance with the rights created by the agreement, AKT began doing work on the premises. Jordan leased the premises out from under AKT when AKT's principal was called out of the country. The damages that AKT sought in the 2023 Petition were of a completely different character than the tax liability that had arisen from the cigarette-purchase issue. The 2023 Petition alleged the following damages that were above and beyond the damage alleged for misuse of tax information that gave rise to the cigarette-purchase issue:

> b. The cost and expense of all of [Jordan's] debts paid by [AKT] on representation that the failure to pay such debts would cloud [AKT's] potential title to the Property;

> c. The extent to which [Jordan] was enriched by [AKT's] lease and improvements of the Property including based on representations made to third parties;

27

d. The exten[t] of improvements made to the Premises by [AKT];

e. All consequential damages incurred by [AKT] as a result of the premature termination of the lease purchase agreement including damages to business and cost to relocate.

It seems difficult to fathom how the claims in the 2023 Petition were not "a wholly new, distinct, or different transaction" than those in the 2018 Petition. *See Walker*, 296 S.W.3d at 695. Nor can we see how they could not be a different transaction when the definition of a transaction looks to whether it involves "a set of facts that gives rise to the cause of action premised thereon." *Id.* The overlap of the underlying facts in the petitions is slight and only to the extent that AKT and Jordan had a contractual relationship. Beyond this slight overlap, the set of facts that gives rise to the newly pleaded causes of action in the 2023 Petition completely diverges from those in the 2018 Petition. As the cases we cited above hold, the existence of an overarching relationship is not sufficient to make every disparate claim that has some tie to the relationship enough to mean that they stem from the same transaction.[11]

_____

[11]AKT tries to salvage its claims in the 2023 Petition from the bar of limitations by arguing that the claims should relate back not only to the 2018 Petition but also to a motion for default judgment that was filed but was not granted a few months after the filing of the 2018 Petition. If we understand the argument, AKT argues that an affidavit filed in support of the motion shows that the parties had a broader dispute than the one referenced in the 2018 Petition. First, we disagree that the affidavit reveals that a broader transaction was at play than the misuse of AKT's tax-identification number. Second, the argument ignores the language of Section 16.068 that begins "[i]f a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading" that relates to the same

We overrule AKT's sixth issue and hold that the trial court did not err by granting a summary judgment with the effect that the claims made in AKT's 2023 Petition (beyond those relating to claims for tax liability on the sale of cigarettes) were barred by limitations.

### 3. We hold that the trial court erred by awarding Jordan attorney's fees.

We next turn to AKT's eighth issue challenging the trial court's award of attorney's fees to Jordan. Only the 2023 Petition alleged a claim for breach of contract that could be a predicate for attorney's fees under Section 38.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8) (permitting recovery of attorney's fees "if the claim is for . . . an oral or written contract"). Our immediately preceding holding established that this claim was barred by limitations. In its amended motion for summary judgment, Jordan sought attorney's fees under Section 38.001, presumably based on the contention that if it prevailed in the motion for summary judgment, it had defeated AKT's breach-of-contract claim. In its summary-judgment order granting Jordan's amended summary-judgment motion, the trial court awarded Jordan attorney's fees. AKT challenges the

---

transaction may relate back. Tex. Civ. Prac. & Rem. Code Ann. § 16.068. AKT argues that the motion is a pleading and must fall within the ambit of Section 16.068 that also uses the word pleading. But then AKT ignores what Section 16.068 references as a pleading. According to Section 16.068, it is a pleading that is subsequently amended or supplemented—events that never occurred and could not occur with respect to the motion for default after Jordan answered. AKT's attempt to wedge the motion for default judgment into the language of Section 16.068 fails.

award by arguing that Jordan had no basis to recover fees. Jordan argues that a narrow principle—which applies when a party defeats a breach-of-contract claim—permitted it to recover fees. We disagree that Jordan has brought itself within the exception and hold that the trial court erred by awarding Jordan attorney's fees.

Texas follows the American Rule that attorney's fees are not recoverable unless authorized by statute or contract. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). In its brief, Jordan relies on Section 38.001 but also recognizes the rule that a recovery of fees under Section 38.001 must be supported by a recovery of damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001. Jordan is correct:

> Section 38.001(8) provides that a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code [Ann.] § 38.001(8). To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable[] and (2) recover damages.

*Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Without elaboration, Jordan argues that it recovered "something of value" that brings it within the ambit of Section 38.001. The "something of value" principle is one of narrow import. This principle has been applied by some courts of appeals to situations when there is no recovery of damages on a breach-of-contract claim but other relief is granted, such as specific performance or an injunction. The First Court

30

of Appeals has done an admirable job of summarizing the split of authority on this

question:

> The courts of appeals are split on the issue of whether recovery of monetary damages is necessary to support a claim for attorney's fees under Chapter 38 or whether prevailing on a breach-of-contract claim and recovering relief by an order of specific performance of the contract is sufficient to support such an award. The Austin and Texarkana courts have concluded that attorneys' fees under Chapter 38 may not be awarded to the prevailing party in a breach-of-contract case absent a monetary recovery. *Haubold v. Med*[.] *Carbon* [*Rsch.*] *Inst.*, [No. 03-11-00115-CV,] 2014 WL 1018008[,] at *5–6 (Tex. App.—Austin Mar[.] 14, 2014, no pet.) (mem. op.) (concluding that specific performance in enforcing Rule 11 agreement was not a recovery of actual damages and thus attorney's fees incurred in enforcing the agreement were not recoverable); *Berg v. Wilson*, 353 S.W.3d 166, 182 (Tex. App.—Texarkana 2011, pet. denied) (concluding that "because [appellee] did not recover actual damages, she was not entitled to recover attorneys' fees on her [Rule 11] breach[-]of[-]contract claim," but affirming award on alternative basis).

> In contrast, this [c]ourt has held that relief in the form of specific performance of the contract is a recovery that remedies actual damage for a valid claim. *See Albataineh v. Eshtehardi*, [No. 01-12-00671-CV,] 2013 WL 1858864, at *1–2 (Tex. App.—Houston [1st Dist.] May 2, 2013, no pet.) (mem. op.) (holding that "an award of specific performance of the parties' settlement and of the restrictive covenant in the special warranty deed" supported an award of Chapter 38 attorneys' fees and rejecting the argument that money damages in addition to relief by specific performance were required); *see also* Tex. Civ. Prac. & Rem. Code [Ann.] § 38.005 ("This chapter shall be liberally construed to promote its underlying purposes.").

> Other courts of appeals have likewise recognized that a "valid claim" under [S]ection 38.001(8) is not limited to a claim for monetary damages[] but also encompasses specific performance of the agreement to avoid actual damage. *Woody v. J. Black's, L.P.*, [No. 07-12-00192-CV,] 2013 WL 5744359, at *6 (Tex. App.—Amarillo Oct. 1[8], 2013, pet. denied) (mem. op.) (recognizing that an "injunction enforcing specific performance of a contract is something of value" sufficient to support

Chapter 38 attorneys' fees and rejecting argument that an award of monetary damages [was] required); *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that award of specific performance of arbitration agreement permitted recovery of Chapter 38 attorneys' fees and rejecting argument that monetary damages were required); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (interpreting Chapter 38 to authorize an award of attorneys' fees when a party "successfully prosecutes a claim founded on . . . written contracts[]'").

These cases reflect the courts' recognition that an injunction to enforce specific performance under a contract is of pecuniary value if that enforcement prevents actual loss to the aggrieved party. *Butler*[ v. *Arrow Mirror & Glass, Inc.*], 51 S.W.3d [787,] 797 [(Tex. App.—Houston [1st Dist.] 2001, no pet.)] (quoting *Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ)[, and] recognizing that injunction enforcing covenant not to compete was something of value)[]. This meaningful recovery of value in these cases renders them distinguishable from cases denying recovery of attorneys' fees because the prevailing party had no recovery at all (or at most a nominal recovery) for breach of the underlying contract. *See MBM Fin. Corp.*[ v. *Woodlands Operating Co.*,] 292 S.W.3d [660,] 663 [(Tex. 2009)] ("[T]he [appellees'] fee award cannot be affirmed based on Chapter 38" because they "can recover neither actual nor nominal damages."); *Green* [*Int'l*], 951 S.W.2d [at] 390 (reversing attorneys' fees award because although jury found that contract was breached, it awarded zero damages for breach).

*Boyaki v. John M. O'Quinn & Assocs., PLLC*, No. 01-12-00984-CV, 2014 WL 4855021, at *13–14 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. denied) (mem. op.); *see also Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *14 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.) ("[C]ourts have recognized that a 'valid claim' under [S]ection 38.001 of the Texas Civil Practice[] and Remedies Code is not limited to a claim for monetary damages[] but also encompasses specific

32

performance of the agreement to avoid actual damages."); *Palavan v. McCulley*, 498 S.W.3d 134, 143 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (following *Boyaki)*; *Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015 WL 9242048, at *3 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.) (following *Boyaki*'s holding that "a judgment requiring specific performance of a material contract right is an award of value that will support an award of attorney's fees under Chapter 38 in the absence of a monetary damage award").

Jordan did not recover any relief tantamount to the "something of value" principle discussed in the cited authority; it simply defeated AKT's breach-of-contract claim. Thus, it has failed to bring itself within the principle it cites but does not explain. We sustain AKT's eighth issue and hold that the trial court erred by awarding Jordan attorney's fees.

**B.    We review the trial court's disposition of the claims made by AKT in the 2018 Petition.**

Now we turn to the mare's nest created by the parties with respect to the 2018 Petition's claims. Again, to try and create some coherence for this opinion, we must reorder AKT's issues. We do so as follows:

- Jordan filed a no-evidence motion for summary judgment that challenged AKT to bring forward evidence on the elements of the claims made in the 2018 Petition. The trial court heard this motion and signed an order dismissing with prejudice the causes of action pleaded in the 2018 Petition. AKT's brief musters one five-sentence paragraph— without case citations—attacking the granting of the motion for summary judgment on no-evidence grounds. AKT's reply brief expands its argument slightly. We will address whether the trial court erred by

33

dismissing AKT's fraud claim in the 2018 Petition and hold that it did. Otherwise, AKT's briefing is so deficient that it has waived error.

- We then turn to the question of whether the fraud claim in the 2018 Petition is barred by limitations. AKT argues that the discovery rule saves its fraud claim from the bar of limitations. Jordan responds that AKT never pleaded the discovery rule and cannot rely on it. However, AKT's summary-judgment response relied on the discovery rule, and Jordan did not object that AKT had failed to properly raise the issue; thus, Jordan has waived its complaint that AKT cannot rely on the discovery rule. Application of the discovery rule creates a fact issue regarding whether the discovery of Jordan's fraud placed the filing of the 2018 Petition within the four-year limitations period for a fraud claim.

- Because our ruling will necessitate a remand of the fraud claim, we also address whether the trial court erred by granting Jordan's motion to withdraw deemed admissions. We hold that the trial court did not abuse its discretion by permitting the withdrawal of the deemed admissions.

### 1. Other than its fraud claim, AKT has waived error that the trial court erred by granting a no-evidence motion for summary judgment on the claims in its 2018 Petition.

We now turn to AKT's seventh issue claiming that it was error for the trial court to grant Jordan's no-evidence motion for summary judgment.[12] Jordan raised no-evidence grounds that attacked the elements of AKT's claims without specifying

---

[12]We review a no-evidence summary judgment under the same legal-sufficiency standard used to review a directed verdict. Tex. R. Civ. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary-judgment motion, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *See Gish*, 286 S.W.3d at 310; *see also* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). In other words, if the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith*, 288 S.W.3d at 424; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

whether it was attacking those causes of action that were pleaded in the 2023 Petition or in the 2018 Petition. At this point, the causes of action alleged in the 2023 Petition—other than those relating to claims for tax liability on the sale of cigarettes—have dropped from our consideration because of our holding that they are barred by limitations. We turn to whether a summary judgment on no-evidence grounds was appropriate with respect to the causes of action for fraud and breach of fiduciary duty pleaded in the 2018 Petition. We address the no-evidence summary-judgment ruling first because if the causes of action were properly dismissed on no-evidence grounds, AKT's other issues challenging a conclusion that they were barred by limitations becomes irrelevant.

AKT's entire argument challenging the trial court's no-evidence rulings is as follows:

> There is no basis for [rendering] judgment on [AKT's] claims under Tex. R. Civ. Proc. 166a(i). [Jordan] moved for summary judgment on the basis that [AKT] had no evidence of each of its causes of action. It is clear that the trial court did not hear argument on the no[-]evidence motion.[13] *It is likewise apparent that [AKT] responded to this motion with the affidavit of Keyvan Moslemi[,] which established each essential element of [AKT's] claims.* [AKT] met the no[-]evidence burden of Tex. R. Civ. Proc. 166a(i)[,] and any [j]udgment issued on the basis of same should be reversed by this [c]ourt. [Record references omitted.] [Emphasis added.]

Thus, AKT leaves the whole question of what elements were challenged by Jordan on no-evidence grounds and what evidence AKT presented to raise a fact question on

---

[13]The trial court began its hearing by stating, "So I've got defendant's [motion for] summary judgment." That motion included the no-evidence grounds.

those elements to a single sentence offering only that it should be "likewise apparent" that the no-evidence ruling was wrong. Simply, AKT is telling this court to go on its own journey to determine which elements were attacked and to then match the evidence to the elements. That is not our job. *See De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *8 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.) (outlining in detail the principles of briefing waiver).

By taking this indifferent approach, AKT permits us to hold that it has waived error on the contention that the trial court erred by granting a no-evidence summary judgment and that the game is over. *See Pounders v. Timely Prop. Sols., L.L.C.*, No. 02-22-00395-CV, 2023 WL 3114314, at *2 (Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.) ("When a party moves for summary judgment on both traditional and no-evidence grounds and the appellant fails to challenge the no-evidence grounds on appeal, we must affirm on the no-evidence grounds.").

We will accord AKT grace with respect to one of its claims—fraud. In its reply brief, it at least hints at a basis for the claim:

> [Moslemi's affidavit] discusses that [AKT] requested to retain access to the property during the term of the lease[-]purchase agreement; had fraudulently represented it would sell [Moslemi] the property and comply with the lease purchase and that instead it had refused to sell him the property and had retained access to the property for the purpose of accessing and using [Jordan]'s records.

Otherwise, the reply brief states, "Likewise, the fiduciary duty and joint[-]venture claim was the core basis for the Texas Comptroller's original decision as set forth in

36

detail in paragraph 12 of Mr. Moslemi's 2024 declaration and the 2018 affidavit."

This sentence leaves us without a clue for a basis to review the trial court's no-evidence ruling on how a fiduciary duty arose or a joint venture existed, and we will not undertake AKT's work for it.

2.    **The trial court erred by granting a no-evidence motion for summary judgment on the fraud claim alleged in the 2018 Petition.**

In its brief, Jordan argues that AKT failed to bring forward evidence on an element of its fraud claim in the 2018 Petition.[14]  The core of Jordan's argument is as follows:

> In AKT's Response to T Jordan's no-evidence motion for summary judgment and specifically the Original Fraud Claim as it concerned the alleged $60,000 in tax liability damages resulting from unauthorized access and use of AKT's taxpayer information for cigarette purchases specifically, AKT states that "[AKT] was defrauded when [Jordan] falsely represented that it needed to maintain access to the [Property] while it was originally under development by [Jordan]."
>
> However, this assertion has no citation to actual evidence. Indeed, upon review of Mr. Moslemi's sworn declaration attached to AKT's response, he also makes no reference to any false representation made by T Jordan for it to fraudulently gain access to the Property and obtain his taxpayer information as alleged in AKT's response and pleadings.  Mr. Moslemi only states that he received documents that "reflect that Mr. [Aldiab] had signed his name to various materials using [AKT's] TAX ID number," however none of these documents were

---

[14] "A common[ ]law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."  *Zorrilla*, 469 S.W.3d at 153 (cleaned up) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998), and *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)).

produced. In addition, AKT produced the following evidence to satisfy its burden as to said fraud claim:

- The deemed admissions, which were later withdrawn by the [t]rial [c]ourt[;]

- An unsigned and incomplete "Contract for Sale of Real Property," which does not even indicate the Property anywhere within it and directly contradicts AKT's own pleadings that there was a "Lease Purchase Agreement[]"; and

- A single, blurry page of a "Texas Notification of Hearing Results" for an audit period of April 2011 through December 2013 with a total amount due of $46,173.79. [Record references omitted.]

As noted by Jordan, AKT's summary-judgment response relied on what were, at the time, deemed admissions of Jordan. Jordan did not move to withdraw the deemed admissions until the same day that AKT filed its summary-judgment response, and an order withdrawing them was not signed until the trial court granted Jordan's summary-judgment motion. Thus, at the time that AKT filed its response, the following admissions were deemed admitted:

REQUEST NO. 3: Admit that AKT and T Jordan agreed on a lease purchase agreement for a parcel of property owned by T Jordan.

REQUEST NO. 5: Admit that T Jordan improperly accessed the premises it leased to AKT.

REQUEST NO. 6: Admit that without AKT's consent T Jordan accessed and used AKT's sales tax permit for T Jordan's own uses.

REQUEST NO. 7: Admit that T Jordan purchased items using AKT's sales[-]tax permit without AKT's consent.

REQUEST NO. 9: Admit that as a result of T Jordan['s] using AKT's sales[-]tax permit without consent, AKT incurred damages in the form of tax payments due and payable for T Jordan's purchases.

These admissions at least suggest that Jordan had improperly accessed the premises occupied by AKT.

Then, Mr. Moslemi's declaration filed in support of AKT's response outlined the misuse of AKT's information and the damages caused by that act:

9. Also in 2013, I received a delinquent[-]tax invoice for items purportedly sold under my Tax ID number during the years 2011, 2012, and 2013. As I had not operated a business during most of this time frame, I retained counsel to assist in protesting the tax bill. I did not know the source of these charges and assumed them to be an error or a mix[-]up with the Comptroller.

. . . .

12. In the spring of 2015, as part of the personal[-]property tax protest, I learned that [Jordan] had accessed and acquired my Tax ID number and had been using it to make purchases since at least 2011. I subsequently prepared an accounting of the amounts[,] which I believed were solely due as a result of [Jordan's actions,] and in 2016[, I] presented [Jordan] with a demand for payment of these sums. In late May of 2016[, Jordan] responded to this request [by] refusing to make payments for items that had been sold under the AKT tax ID number but which had been taken and sold separately and for the sole benefit of [Jordan]. We subsequently presented these claims to the Comptroller asking them to apportion the amounts due between the respective parties[;] however[,] the Comptroller's decision issued in 2017 refused to do so on the basis that AKT as the license holder was responsible for monitoring and confirming the accuracy of any submissions made by business partners using the Tax ID at the associated address and asserting that [Jordan] was analogous to a joint venturer or partner in the business. Some of the documents produced as part of that protest reflect that Mr. . . . Diab had signed his name to various materials using my TAX ID number and that the sales included sales of cigarettes and other materials not sold by AKT but by T Jordan and Mr. Diab at other

locations operated by them. While the Comptroller was sympathetic to my position in the matter[,] they stated that the tax liability for the sold goods was clear and ordered me to pay the sum of $46,173.79 in [a] statement set forth in the attached Exhibit G. At the time[,] the Comptroller suggested to my lawyer that my proper recourse would be to bring suit against T Jordan towing for the sums in question.

Exhibit G referenced in the declaration is a "notification of hearing results" showing $46,173.79 in taxes, penalties, fees, and interest due by AKT. The record contains no order on any objection filed by Jordan, and Jordan references no objection in its brief.[15]

Though razor thin, the evidence offered by AKT constitutes more than a scintilla that supports its fraud claim in the 2018 Petition. Although they do not mention improperly gaining access to a key as alleged in the 2018 Petition, the admissions do reference improperly accessing the leased premises and financial information. The declaration outlined how the allegedly improper use of that information damaged AKT. Thus, we conclude that the trial court erred by granting a no-evidence summary judgment with respect to the fraud claim in AKT's 2018 Petition, and we sustain only that portion of AKT's seventh issue; we overrule the remainder of that issue.

---

[15]Jordan references no ruling on any objection it made. To preserve error on an objection to the form of summary-judgment evidence, a party must obtain a written or oral ruling sustain the objection. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022) (holding that an unequivocal oral ruling on an objection is sufficient); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (holding that when a party fails to obtain a ruling on an objection to the form of an opponent's summary-judgment evidence, appellate review of the objection is waived).

### 3. There is a fact question regarding whether the fraud claim alleged in the 2018 Petition is barred by limitations.

In its fifth issue, AKT argues that its claims made in the 2018 Petition are not barred by limitations. With respect to the fraud claim that survived our preceding no-evidence analysis, we agree that there is a fact question regarding whether it is barred by the applicable four-year statute of limitations.

In its first amended motion for summary judgment, Jordan argued that the causes of action alleged in the 2018 Petition were barred by limitations. This argument was predicated on the contention that

> all the facts giving rise to each of its causes of action occurred before December 1, 2013. Because AKT filed its . . . [o]riginal [p]etition in 2018, over four years after the facts allegedly giving rise to each cause of action alleged in [its] [o]riginal [p]etition[ had occurred], each of its original causes of action are also barred by their applicable limitations periods. [Exhibit reference omitted.]

However, in its response, AKT alleged that it did not discover Jordan's involvement in the tax issue until 2015:

> While [AKT was] presented with a tax bill in 2013[,] it was not until the subsequent appeal of that matter that [AKT] learned that [Jordan] was involved in the use of its tax ID. In fact[,] it was not until April 29, 2015[,] that [AKT] learned that [Aldiab] had signed documents using [AKT's] tax ID number as reflected in documents produced by the Comptroller and other parties as part of the pending appeal of the Comptroller's decision in this matter. [Exhibit reference omitted.]

Jordan does not contend that the evidence offered by AKT would be insufficient to delay the accrual date of limitations on the fraud claim until April 29,

41

2015—the date when AKT claimed that it had discovered the fraud—or that this date was within four years of March 23, 2018—the filing date of the 2018 Petition.

Instead, Jordan claims that AKT never raised the discovery rule and cannot rely on that principle to delay the accrual date of limitations. But the quote from AKT's response demonstrates that AKT raised the issue in its summary-judgment response. Nothing in the record shows that Jordan objected to the contention or challenged AKT's ability to raise the discovery rule to the fraud claim based on the fact that it was not pleaded.[16] Jordan consented to AKT's invocation of the discovery rule even though AKT did not plead it. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (stating that when plaintiff asserted the discovery rule for the first time in its summary-judgment response, defendant "had two choices: it could object that the discovery rule had not been pleaded, or it could respond on the merits and try the issue by consent"); *Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.) (reversing summary-judgment ruling when plaintiff relied on the discovery rule in its summary-judgment response, defendant did not object to reliance on the discovery rule and therefore tried the discovery-rule issue by consent, and defendant did not address application of the discovery rule after it was raised by plaintiff in its summary-judgment response). Thus, AKT created a fact issue on the question of

---

[16]In one pleading, Jordan challenged whether the discovery rule would aid AKT in saving its unjust-enrichment claim from limitations but did not object to AKT's invocation of the discovery rule.

whether its 2015 discovery of Jordan's alleged fraud occurred within four years of the filing of its 2018 Petition.

We sustain AKT's fifth issue to the extent that the trial court dismissed the fraud claim in the 2018 Petition based on the ground that it was facially barred by limitations,[17] and we overrule the remainder of AKT's fifth issue as to the timeliness of the other claims in its 2018 Petition.

### C. The trial court did not err by allowing the withdrawal of deemed admissions.

AKT's first issue is that the trial court erred by allowing Jordan to withdraw deemed admissions. Because the question of whether the deemed admissions were properly withdrawn will impact the proof available to AKT upon remand, we will address whether the trial court erred in its ruling. The trial court did not abuse its discretion by permitting the withdrawal of the deemed admissions because Jordan offered good cause for its failure to answer and because AKT's claims of prejudice ring hollow.[18]

---

[17]Our holdings obviate the need to discuss AKT's fourth issue, which argues that the statute of limitations with respect to its 2018 claims was suspended by fraudulent concealment or equitable estoppel. *See* Tex. R. App. P. 47.1. It also obviates discussion of AKT's third issue arguing that the statute of limitations was suspended during the pendency of a bankruptcy proceeding filed by Jordan that occurred before the filing of the 2018 Petition. *See id.*

[18]We do not reach the question of whether the admissions were improper because they were merits preclusive. *See* Tex. R. App. P. 47.1.

43

The Texas Supreme Court recently summarized the principles that govern a trial court's decision permitting a party to withdraw or amend the responses to requests for admissions (RFAs) that we will follow on the question of whether the trial court abused its discretion by permitting Jordan to withdraw the deemed admissions:

> We start with some basic principles. RFAs are intended to simplify trials by eliminating "uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents." *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005); *see also Sanders v. Harder*, . . . 227 S.W.2d 206, 208 ([Tex.] 1950) ("The primary purpose of the rule [on RFAs] is to simplify trials by eliminating matters about which there is no real controversy[] but which may be difficult or expensive to prove."). RFAs were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." *Sanders*, 227 S.W.2d at 208; *accord Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (citing *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996)). RFAs "should be used as 'a tool, not a trapdoor.'" *Marino*, 355 S.W.3d at 632 (quoting *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)).
>
> In keeping with these principles, the trial court should allow a party to withdraw or amend an admission "upon a showing of (1) good cause, and (2) no undue prejudice." *Wheeler*, 157 S.W.3d at 442; *accord* Tex. R. Civ. P. 198.3; *Marino*, 355 S.W.3d at 633; *Stelly*, 927 S.W.2d at 622. This is not a high bar. "Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler*, 157 S.W.3d at 442. We have also equated the existence of good cause with the absence of "evidence of flagrant bad faith or callous disregard for the rules." *Marino*, 355 S.W.3d at 634; *see also Wheeler*, 157 S.W.3d at 443–44.
>
> There are two aspects to the undue-prejudice inquiry. One is whether permitting withdrawal of an admission would "delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443 (citing *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002)). The second is whether "presentation of the merits of the action will be subserved by permitting the party to

amend or withdraw the admission." Tex. R. Civ. P. 198.3(b). These "two are different sides of the same coin, as presentation of the merits will suffer (1) if the requesting party *cannot* prepare for trial, and also (2) if the requestor *can* prepare but the case is decided on deemed (but perhaps untrue) facts anyway." *Wheeler*, 157 S.W.3d at 443 n.2.

We have said that trial courts have "broad discretion" to permit or deny a request to change an admission. *Marino*, 355 S.W.3d at 633; *Wheeler*, 157 S.W.3d at 443; *Stelly*, 927 S.W.2d at 622. But broad is not unlimited, and the court's discretion is narrowest when denying permission to make the change would "compromise presentation of the merits." *Wheeler*, 157 S.W.3d at 443; *cf. Marino*, 355 S.W.3d at 634 ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults.").

*In re Euless Pizza, LP*, 702 S.W.3d 543, 546–47 (Tex. 2024) (orig. proceeding) (footnotes omitted).

Jordan's motion to withdraw deemed admissions portrayed the confusion that surrounded the service of the requests. According to an affidavit filed by Jordan's corporate representative in support of its motion, Jordan's prior counsel had her law license suspended in 2022. Early in 2023, Jordan retained additional counsel, apparently to respond to the appeal of the trial court's dismissal for want of prosecution. But appellate counsel did not agree to undertake representing Jordan in the trial court if the matter was remanded. According to its corporate representative, Jordan obtained trial counsel in January 2024. The corporate representative's affidavit outlined the sequence of events with respect to the service of the admissions and when she first knew of them:

I have reviewed the letter the Company's previous counsel sent to the Second Court of Appeals on December 9, 2022[,] and which is attached

45

as part of [AKT's] [m]otion for [t]raditional [s]ummary [j]udgment. I did not receive a copy of this letter. The last known address she provided of the Company, 7401 Calmar Court, Fort Worth, Texas 76112, is not the correct address. The correct address for the Company is 7400 Calmar Court, Fort Worth, Texas 76112, which is reflected publicly on the Texas Comptroller's taxable[-]entity database.

. . . For the above reasons, the Company did not receive AKT Investment, Inc.'s Requests for Admissions on September 27, 2023[,] because they were sent to the incorrect address. The Company did not actually receive the Requests for Admissions until after retaining its current legal representation in January of 2024.

Present trial counsel for Jordan responded to the admissions in March 2024 but did not file a motion to withdraw deemed admissions until after AKT filed a motion for summary judgment that relied on the deemed admissions.

Between its opening brief and its reply brief, the only argument that AKT has mustered to challenge that Jordan had good cause to withdraw the deemed admissions is that it let time linger too long because Jordan "allowed 10 months to pass before attempting to withdraw deemed admissions." As we have already noted, Jordan's counsel, though she did not move to withdraw the admissions, did file responses to them within approximately two months of learning of their existence. Again, a showing of good cause is not a high bar and requires only the showing of "an accident or mistake[ that was] not intentional or the result of conscious indifference." *Id.* at 546. Here, the confusion surrounding the deemed admissions supports the trial court's broad discretion in determining that good cause existed to permit their withdrawal.

And the flesh of AKT's argument is that withdrawal of the deemed admissions prejudiced it. To say the least, AKT's argument is unique. It turns on the fact that Jordan's principal, who had dealt with AKT's principal with respect to the transactions at issue, died during the litigation. The prior principal's daughter, who was apparently a minor during the operative time period of the parties' dealings and had little personal knowledge of those dealings, then became Jordan's corporate representative. AKT's reply brief crystalizes the argument as follows:

> [A]llowing the withdrawal severely prejudiced [AKT], who had built its case around the admissions and was deprived of the opportunity to cross-examine [Jordan's deceased corporate representative] who was the only known fact witness for [AKT] and who had passed away sometime prior.
>
> The trial court's ruling violated due[-]process principles by depriving [AKT] of its legitimate reliance on the admissions. Given that the deemed admissions addressed essential elements of [AKT's] claims, their withdrawal effectively denied [AKT] the benefit of its previously established case. [Footnote omitted.]

Here, no trial of the cause was delayed, and AKT lost only the ability to predicate its motion for summary judgment on the deemed admissions. That loss did not even disable it from pressing its motion for summary judgment with the affidavit and a hundred pages of supporting evidence from its corporate representative.

And we do not understand what "due process" right AKT was deprived of. First, we know of no due-process right to rely on a deemed admission, and AKT cites no case establishing one. In essence, AKT's argument is that it had built its case on the deemed admissions. But if a party could claim that it had relied on a deemed

47

admission and that this forever disabled a responding party from making a showing of good cause to withdraw the deemed admission, then the RFA process would become the inescapable trap that the supreme court has warned that it should not become.

Nor do we understand the argument that AKT suffered prejudice because of an interrelationship between the deemed admissions and the death of Jordan's corporate representative who had the most intimate knowledge of the parties' dealings. Whether Jordan's corporate representative was dead or not, AKT as plaintiff still bore the burden of proof and the burden of persuasion on the merits to convince a factfinder that it should prevail. AKT—even without the deemed admissions—retained its advantage of having an opponent that might lack the ability to rebut its factual claims. But with Jordan's showing of good cause, the trial court did not abuse its broad discretion by permitting withdrawal of the deemed admissions even though it deprived AKT of the additional advantage of not having to meet its burden of proof because of deemed admissions.

We overrule AKT's first issue.

## D. The trial court did not err by denying AKT's motion for summary judgment.

In its ninth issue, AKT argues that the trial court erred by denying its motion for summary judgment. As AKT's brief notes, the motion sought judgment on AKT's claims for breach of contract and unjust enrichment that were raised in the 2023 Petition. We have already held that those claims are barred by limitations. Thus,

48

the motion sought judgment on claims that were not viable. We overrule AKT's ninth issue.

## IV. Conclusion

Tying our conclusion to the numbering of AKT's issues,

- We overrule the portion of AKT's second issue asserting that the trial court was barred by failings in Jordan's disclosure response from applying the relation-back doctrine; we overrule the remaining claim of error in AKT's second issue;

- We overrule AKT's sixth issue arguing that the claims made in the 2023 Petition are not barred by limitations because they relate back to the claims in the 2018 Petition;

- We sustain AKT's eighth issue contending that the trial court erred by granting summary judgment that Jordan was entitled to recover attorney's fees;

- We sustain AKT's seventh issue only to the extent that the trial court erred by granting summary judgment dismissing the fraud claim alleged in the 2018 Petition; otherwise, AKT has waived error;

- We sustain AKT's fifth issue solely to the extent that there is a fact question regarding whether the fraud claim alleged in the 2018 Petition is barred by limitations;

- We do not reach AKT's third and fourth issues;

- We overrule AKT's first issue asserting that the trial court erred by permitting the deemed admissions to be withdrawn; and

- We overrule AKT's ninth issue contending that the trial court erred by denying AKT's motion for summary judgment.

Thus, we reverse the trial court's summary judgment dismissing AKT's fraud claim that was alleged in its 2018 Petition, and we remand only that claim to the trial

court for further proceedings.  We reverse the trial court's award of attorney's fees to Jordan and render that it take nothing on its fee claim.  We affirm the remainder of the trial court's summary judgments and the order granting Jordan's motion to withdraw the deemed admissions.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  May 29, 2025